IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01844-WJM-MEH

JAMES ST. VELTRI,

      Applicant,

v.

ARI ZAVARES, Director of D.O.C.,
WARDEN BRILL, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

## RECOMMENDATION FOR DISMISSAL

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Applicant has pending before this Court an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [docket #4]. Respondents have filed their Answer [docket #26] and, although given the opportunity to do so, Applicant did not file a Traverse [*see* docket #23]. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation. Based on the record contained herein, I RECOMMEND that the Application be **denied** and this matter dismissed with prejudice.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the

## SUMMARY OF THE CASE

In June 2005, a jury found the Applicant guilty of a Class III felony for possession with intent to distribute a controlled substance and a Class IV felony for possession of a controlled substance.  Trial Transcript of June 29, 2005, Vol. XI, p. 76.[2]  The trial court imposed concurrent prison sentences of twelve years, to be served concurrently with a parole term in an unrelated case. Hearing Transcript of Sept. 9, 2005, Vol. XIII, p. 6; Hearing Transcript of Sept. 16, 2005, Vol. XIV, p. 2.  Applicant appealed the verdict, and the Colorado Court of Appeals affirmed Applicant's convictions. *See People v. Veltri*, No. 05CA2003 (Colo. App. Apr. 3, 2008) (not published), docket #19-3. The Colorado Supreme Court denied certiorari review on July 14, 2008.  *St. Veltri v. People*, No. 08SC0382 (Colo. Jul. 14, 2008) (unpublished), docket #19-5.

On August 8, 2008, Applicant filed a motion for sentence reconsideration. *See* District Court File, Vol. II.  The trial court denied this motion on October 14, 2008.  *Id.*  Applicant did not appeal. On December 22, 2008, Applicant filed a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c).  *Id.*  The trial court denied this motion on June 17, 2009.  *Id.*; *see also* Application, docket #4 at 39-40.  Applicant did not appeal the order.  Application, docket #4 at 38.

Applicant initiated this action by filing his original application on August 4, 2009.  Docket #3.  However, Magistrate Judge Boland directed Applicant to file an application on the proper form, and on August 12, 2009, Applicant filed an Amended Application ("Application"), the operative

---

aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]Unless identified as a document filed on this Court's "docket," the citations refer to the state court record in this case.

pleading in this matter.  Docket #4.

Thereafter, Judge Boland ordered Respondents to file a pre-answer response addressing only the affirmative defenses of timeliness and exhaustion of state court remedies. Dockets #6 & #9. Respondents conceded that the Application appears to be timely, but argued that part of Claim One, alleging violations of the Fourth Amendment, and all of Claim Two, alleging violations of the Fourteenth Amendment's due process clause, are procedurally defaulted. *See* docket #19.  Applicant did not respond to the pre-answer response; instead, Applicant filed a motion asking the Court to consider only his alleged Fourth Amendment violations.  Docket #20.

Consequently, Judge Weinshienk issued an order granting the motion and dismissing the due process claim in Claim Two.  Docket #21.  In addition, Judge Weinshienk dismissed part of Claim One (alleging that Applicant's arresting officers committed perjury at trial) as procedurally defaulted (Applicant raised the claim in a post-conviction motion, but did not appeal the trial court's decision denying the motion), and drew the remainder of Claim One to a district judge and a magistrate judge.  *Id.*

Thus, Applicant's remaining claim for relief alleges that the trial court[3] erred in failing to suppress evidence obtained in a search, where the parole officer(s) who conducted or authorized the search (resulting in the seizure of a controlled substance) acted "improperly" as an agent for the police in violation of the Fourth Amendment.  Application at 10-11, 44, 91; *see also* Answer to Application for Writ of Federal Habeas, docket #26 at 5.  Because the Respondents challenge neither

_____

[3]As set forth below, Applicant fails to make any specific allegations concerning this claim in his Application, but rather, inserts copies of portions of various briefs from prior proceedings.  Therefore, for purposes of this analysis, the Court will assume that Applicant also claims error by the appellate court.

the timeliness nor exhaustion of this claim, the Court will proceed to analyze its merits.

## ANALYSIS

Applicant proceeds in this action *pro se*.  As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate.  *Hall*, 935 F.2d at 1110.

## I.    Standard of Review

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted).  According to the record in this case, the Applicant is currently serving a twelve-year concurrent sentence for the challenged conviction; therefore, he is "in custody" for purposes of his habeas application.  *See id.*

Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of certiorari review by the Colorado Supreme Court in the attempt made by the Applicant, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive

proceeding in the state appellate review process.

This case is also governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999). Under the AEDPA, a petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

With respect to application of clearly established federal law, the first inquiry is whether clearly established law exists on the issue; only once this is established must the Court determine whether the state court's application of such law is objectively unreasonable. *House*, 527 F.3d at 1018 (citing *Carey v. Musladin*, 549 U.S. 70 (2006)) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)"). "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). As the Supreme Court stated:

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted); *see also Taylor v.*

*Workman*, 554 F.3d 879, 887 (10th Cir. 2009).

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Applicant as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. This requires more than just an incorrect application of federal law, requiring instead a showing "somewhere between clearly erroneous and unreasonable to all reasonable jurists." *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006). Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.* at 671.

With respect to the question whether a decision is based on an unreasonable determination of the facts, the statute provides that factual findings made by the state trial and appellate courts are presumed correct, with the petitioner bearing the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). The burden remains, because "whether a state court's decision was unreasonable must

be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*) (citations omitted).

According to the Tenth Circuit, this Court "owe[s] deference to the state court's *result,* even if its reasoning is not expressly stated." *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999) (emphasis in original). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* However, if the state court does not address a claim on the merits (*i.e.*, a decision reached on procedural rather than substantive grounds), this Court must review the claim de novo and the deferential standards in 28 U.S.C. § 2254(d) are not applicable. *See Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

## II.   Merits of Remaining Claim

Applicant's remaining Claim Two arises under the Fourth Amendment to the U.S. Constitution. Federal habeas review of Fourth Amendment claims is governed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Court stated:

> [W]here the State has provided an opportunity for full and fair litigation of the Fourth Amendment Claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id*. at 494.

The Tenth Circuit Court of Appeals has noted that "[a]lthough *Stone* announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." *Gamble v. State of Okla.*, 583 F.2d 1161, 1165 (10th Cir. 1978). Therefore, the Tenth

Circuit has determined that the meaning of the phrase, "opportunity for full and fair litigation," "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain,* 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least a colorable application of the correct Fourth Amendment constitutional standards." *Gamble,* 583 F.2d at 1165. "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." *Id.*; *see also Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979).

      A.    Applicant's Claim

Upon initial review, Judge Weinshienk appears to have construed Applicant's Claim Two as alleging the following: the state courts erroneously admitted evidence (a controlled substance) seized during a search of the Applicant and his residence allegedly conducted by his parole officer, another parole officer, two detectives from the city of Golden, and a Denver police officer, for which the police improperly used the parole officer as a "pretext" to conduct the search without a warrant. Rather than articulating his claim in the court-provided form, the Applicant has simply attached copies of portions of the state court record, including the Colorado Court of Appeal's decision, a portion of what looks to be the government's answer brief on appeal (including handwritten notes and strike-outs apparently made by the Applicant), and a portion of what appears to be the brief in support of Applicant's post-conviction motion.[4]  Based upon a liberal construction of these documents, the Court finds that Applicant claims the trial court erred in denying his request to

---

[4]Rather than articulating any legal standards concerning applications for writ of habeas corpus, the Applicant asserts the legal standard of review for a "motion for new trial" in the brief attached to the Application.  Application, docket #4 at 47.

suppress evidence from the "pretextual" search, and, because Applicant attached a copy of the appellate court's order affirming the trial court's findings, he claims that the appellate court erred as well. Thus, this Court must determine whether the appellate court applied incorrect constitutional standards and, if not, whether it "willfully refused" to do so.

According to the Applicant, he filed a motion to suppress the evidence found in his apartment on or about September 2, 2004. The trial court held an evidentiary hearing, including witness testimony, on the motion on June 10, 2005, and denied the motion. Hearing Transcript, Vol. 7. Relying primarily on *People v. McCullough*, 6 P.3d 774 (Colo. 2000), the trial court concluded that the search of the Plaintiff's apartment was properly conducted pursuant to Colorado's parole statute requiring each parolee to consent to searches of his or her body, vehicle and residence (*see* Colo. Rev. Stat. § 17-2-201(5)(f)), the search was conducted in furtherance of the purposes of parole related to rehabilitation and supervision of the parolee, and the search was not arbitrary, capricious or harassing. *Id.*

The Colorado Court of Appeals did not disturb the trial court's factual findings and affirmed the court's conclusions of law. *See People v. St. Veltri*, No. 05CA2003 (Colo. Ct. App. Apr. 3, 2008) (unpublished), attached at docket #19-3. Pertinent to the "pretext" argument, the appellate court concluded that the trial court's findings under *McCullough* had support in the record "that the parole officer decided to conduct the home visit based on information that he had; that a home visit was due; that it was reasonable for the parole officer to allow members of the Golden Police Department to question defendant if defendant agreed to speak to them; that the detectives were not involved in the search; that the parole officer had already found some suspicious paraphernalia [the "wizinator"] before searching defendant and his fanny pack; that the parole officers were not agents

of the police department; and that their search of the apartment and the defendant was authorized by the parole statute." *Id.* at *4, docket #19-3 at 6.

In analyzing the within Application, this Court is concerned with proceedings at the appellate court. *See supra* at 4.  The Court agrees with the Respondents that the appellate court applied correct and controlling constitutional standards in this case.

B.    Whether Decision was Based upon Unreasonable Determination of the Facts

First, as set forth herein, the Applicant is entitled to federal habeas relief only if he can establish that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  With respect to Applicant's "pretext" argument, questions regarding the parole officer's purpose in conducting the search, whether the police searched Applicant's apartment after the parole officer gained access, or whether the parole officer was instructed by the police to conduct a search of Applicant's apartment and, thereby, served as an agent of the police, are issues of fact for which a finding by the state court is presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1).  Here, the appellate court found support in the record for the trial court's findings that the detectives were not involved in the search and the parole officers did not act as agents of the police.  The appellate court's finding is entitled to a presumption of correctness.

Applicant does not argue that the appellate court's finding is an unreasonable or unconstitutional interpretation of the facts; rather, in what appears to be a copy of a post-conviction brief attached to the Application, he argues that the police and parole officers committed perjury in the state court proceedings, and he points to alleged inconsistencies in the officers' testimony at the suppression hearing and at trial.  *See* Application, docket #4 at 47 ("[t]he defendant is asking this

honorable court for a ruling for Dismissal in favor of the defendant because of inconsistent testimony of five officers who testified at the (S)uppression Hearing and at trial."). Applicant also relies on testimony given at trial by Julian Archuleta in support of his argument. *Id.* at 44, 54. However, the trial court in this case heard and analyzed the "pretext" question at a pretrial hearing on the motion to suppress and did not have before it any alleged "inconsistent" testimony that may have been given at trial nor any testimony by Mr. Archuleta. *See* Hearing transcript, Vol. 7; *see also Holland*, 542 U.S. at 651-52 ("whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it.").

Moreover, there is no indication that the appellate court had before it any arguments concerning alleged "inconsistent" testimony regarding the search. *See People v. St. Veltri*, *supra*, docket #19-3; *see also* Applicant's Opening Brief on appeal, docket #19-2. Thus, the Applicant has failed to show that the appellate court's finding on the motion to suppress was based upon an "unreasonable determination of the facts in light of the evidence presented" at the suppression hearing.[5] Accordingly, this Court recommends that the District Court find the Applicant has failed to meet his burden of rebutting the presumption of correctness by clear and convincing evidence.

    C.    <u>Whether Clearly Established Federal Law Exists on Pretext Argument</u>

Applicant may also be entitled to habeas relief if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[5]The Court notes that Applicant filed a Rule 35 post-conviction motion in state court on December 22, 2008 attached to which appears to be a copy or version of the brief attached to the Application in this case. *See* District Court File, Vol. Two. Thus, although it appears that Applicant eventually brought his arguments concerning "perjury/inconsistent testimony" before the state court post conviction, Judge Weinshienk has already determined that the Applicant has procedurally defaulted on any claims raised in such motion and, consequently, they will not be addressed here.

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *House*, 527 F.3d at 1015. However, if a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or any unreasonable application of that law. *Williams*, 529 U.S. at 404-05.

With respect to his "pretext" argument, Applicant argues that the Supreme Court's opinion in *Griffin v. Wisconsin*, 483 U.S. 868 (1987) controls in this case and stands for the proposition that "if a probation or parole officer used his special power as nothing more than the AGENT of the police than [sic] the search and seizure is unlawful." Application, docket #4 at 54. This Court disagrees.

In *Griffin*, the Supreme Court held that a search of a probationer conducted pursuant to a Wisconsin regulation replacing the standard of "probable cause" with "reasonable grounds" satisfied the Fourth Amendment. *Id.* at 873. In addition, the Court determined that, to meet the "special needs" of the probation system, it is reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search, and such information need only indicate a likelihood of facts justifying the search. *Id.* at 879-880. There is nothing in *Griffin* indicating a holding or conclusion by the Supreme Court concerning the "improper" or "pretextual" use of a parole officer as an agent of the police in a parolee search. Moreover, the Applicant has cited, and this Court has found, no clearly established Supreme Court

decisions on the subject.[6]  If there is no clearly established law, then the Applicant cannot demonstrate the state courts' decisions are contrary to or an unreasonable application of it pursuant to § 2254(d)(1).  At this point, the Court properly concludes its analysis of Applicant's pretext argument (*see House*, 527 F.3d at 1018), and recommends that the District Court deny the Amended Application.

        D.       <u>Alternatively, Whether Decision Applied Clearly Established Fourth Amendment Law</u>

As set forth above, the Court must construe the *pro se* Applicant's pleadings liberally in this case.  *See Haines*, 404 U.S. at 520-21.  The brief attached to the Application on which the Applicant relies for his statement of claims is, in many ways, ambiguous, disorganized and cumbersome.  As such, this Court concedes it is possible that the District Court will construe the Application to assert a "variation" on the Applicant's Fourth Amendment claim.[7]  That is, in addition to his "pretext" argument, the Applicant also cites to various Fourth Amendment cases and alleges "[i]n the present case, a parolee suffers no greater insult to his privacy when several police officers and a parole officer enters [sic] his home and the essence of the intrusion is the governments [sic] uninvited entrance onto private premises."  Application, docket #4 at 54.  Thus, to the extent that the pleading may be read to include an allegation that the search conducted pursuant to his parole status was

---

[6]The Court has found only circuit decisions supporting the Applicant's pretext argument. *See, e.g., United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996) (citing Sixth Circuit and Ninth Circuit opinions, the court affirmed that a probation officer cannot act as a "stalking horse" on behalf of police to assist police in evading the Fourth Amendment's warrant requirement).

[7]In fact, Respondents' entire argument in response to the Application assumes this liberal construction of the Fourth Amendment claim.

unconstitutional, the Court will proceed to analyze this variation on Applicant's claim.[8]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend IV.  To ascertain whether a search has violated the rights of the particular defendant who seeks to exclude the resulting evidence, the courts consider two primary factors: whether the defendant manifested a subjective expectation of privacy in the area searched, and whether society would recognize that expectation as objectively reasonable. *Bond v. United States*, 529 U.S. 334, 338 (2000) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).  The defendant has the burden of demonstrating that he is entitled to Fourth Amendment protection. *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998).

In June 2006, the Supreme Court addressed the question "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment. *Samson v. California*, 547 U.S. 843, 847 (2006).  The Court held in the affirmative and found that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee in California. *Id.* at 852.  In *Samson*, the petitioner, Donald Samson, was a parolee who was stopped and physically searched by a police officer on the street.  The officer found a baggie containing methamphetamine in a cigarette box in Samson's left breast pocket.  After his arrest, Samson filed a motion to suppress the evidence, but the trial court denied the motion pursuant to a California

---

[8]The Court notes that this variation on the Fourth Amendment claim was raised by the Applicant before the Colorado Court of Appeals to which he argued that the parole officer lacked reasonable grounds to believe Applicant violated his parole conditions before conducting the search.  *See* Applicant's Opening Brief on appeal, docket #19-2 at 14-15.

statute requiring that all parolees "agree in writing to be subject to search or seizure by a parole officer or other peace officer ..., with or without a search warrant and with or without cause." The appellate court affirmed, finding that the search was not arbitrary, capricious or harassing. *Id.* at 847.

Citing its previous decision in *United States v. Knights*, 534 U.S. 112 (2001), the Supreme Court noted it had already concluded that the search of a probationer, who was also required by California law to consent to a warrantless search, was reasonable under the Fourth Amendment where the officers had a reasonable suspicion of criminal activity before they conducted the search. *Id.* at 120-21. In *Samson*, then, the Court was asked to determine a question left open in *Knights* as to whether a search conducted based solely upon the parolee's status (or, without reasonable suspicion) was reasonable. *Samson*, 547 U.S. at 850. The Court answered, "yes." *Id.* at 852.

With these principles in mind, this Court recommends finding that the appellate court's decision here was neither contrary to nor involved an unreasonable application of clearly established federal law.[9] Like the state courts in *Samson* and *Knights*, the appellate court here relied on the Colorado Supreme Court's affirmance (in *People v. McCullough*, 6 P.3d 774 (Colo. 2000)) of a Colorado law requiring a parolee's consent to a parole officer's search of his person, vehicle and residence (the law was amended to remove the requirement for reasonable grounds or suspicion),

---

[9]Applicant's arguments to the contrary, *Griffin* is not inconsistent with the more recent decisions in *Knights* and *Samson*, which were in effect at the time of the state courts' decisions in this case. *See United States v. Warren*, 566 F.3d 1211, 1215-16 (10th Cir. 2009) (recognizing the special-needs exception of *Griffin* and the totality-of-the-circumstances exceptions in *Samson* and *Knights* to the warrant and probable-cause requirements of the Fourth Amendment). In each of these cases, the Supreme Court analyzed the challenged state law or regulation to determine whether they complied with Fourth Amendment standards.

and found that the search of Applicant was not arbitrary, capricious or harassing.[10]  The standards

set forth in *Knights* and *Samson* were controlling at the time of the trial court's and appellate court's

findings of fact and conclusions of law in this matter.

That is, upon being placed on parole, Applicant consented to search without a warrant

pursuant to Colorado law.[11]  When Applicant's parole officer determined that a home visit was due,

he and another parole officer, together with two detectives from Golden who wished to question

Applicant concerning a separate "person of interest," and a local police officer asked by the parole

officer to attend due to Applicant's suspected affiliation with the person of interest who may have

been violent, went to Applicant's apartment.  The parole officers entered the apartment with the

manager's key (Applicant was not there), conducted a search and found paperwork concerning the

purchase of a "wizinator," a device used to mask urine screens.  Accordingly, the trial court found

that, after the initial search in accordance with Colorado's parole law and Applicant's consent, the

---

[10]More specifically, following *Griffin* and other applicable U.S. Supreme Court cases, the court concluded that, while the amended law passed constitutional scrutiny under the Fourth Amendment's proscription against unreasonable searches and seizures, the mere fact that a person is on parole does not automatically justify any warrantless search by a parole officer. *McCullough*, 6 P.3d at 781.  Thus, a search of a parolee in Colorado must be conducted pursuant to any applicable statute, must be conducted in furtherance of the purposes of parole, and may not be arbitrary, capricious or harassing.  *Id.*

[11]Applicant's consent appears to be undisputed by the parties and was made pursuant to Colo. Rev. Stat. § 17-2-201(5)(f)(I)(D) which states:

As a condition of every parole, the parolee shall sign a written agreement that contains such parole conditions as deemed appropriate by the board, which conditions shall include but need not be limited to the following: ...

(D) That the parolee shall make reports as directed by his or her community parole officer, permit residential visits by the community parole officer, submit to urinalysis or other drug tests, and allow the community parole officer to make searches of his or her person, residence or vehicle.

officers had a reasonable suspicion to subsequently conduct a search of Applicant's person,[12] on which they found the controlled substance.   Therefore, following *McCullough* and applying the correct constitutional standards as set forth in *Knights* and *Samson*, *supra*, the appellate court concluded that the trial court's findings of fact were supported by the record and its conclusions of law were correct that the officers' search of Applicant was reasonable under the Fourth Amendment. *Id.*

This Court finds that Applicant has failed to demonstrate the appellate court willfully refused to apply the correct and controlling constitutional standards and, in fact, finds that the appellate court's application was correct.   Consequently, this Court recommends that the District Court deny the Application with respect to the remaining portion of Applicant's Claim One for violation of the Fourth Amendment.

## CONCLUSION

In viewing the merits of the Applicant's claim, the Court finds that the Applicant is not entitled to relief in this Court under 28 U.S.C. § 2254.   Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby RECOMMEND that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [filed August 12, 2009; docket #4] be **denied**, and this case dismissed with prejudice.

---

[12]It is not clear that this finding was necessary, considering that the state statute does not require reasonable suspicion.

Dated at Denver, Colorado, this 23rd day of March, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge